UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

MADISON ROLAND,

Plaintiff,

v.

KEARNEY-NATIONAL, INC.,

Defendant.

CASE NO.

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff MADISON ROLAND ("Plaintiff" or "Ms. Roland") files this Complaint against Defendant KEARNEY-NATIONAL, INC. ("Defendant" or "Kearney") and states as follows:

## NATURE OF THE ACTION

1. Ms. Roland brings this action against Kearney for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Virginia Human Rights Act ("VHRA"), Va. Code Ann. § 2.2-3900, *et seq.*

2. Ms. Roland was employed by Kearney at their HAPCO division in Abingdon, Virginia, as a Sales Resource Coordinator.

3. Kearney discriminated against Ms. Roland by denying her equal employment opportunities due to her sex, caretaker status, and recent pregnancy.

4. Specifically, in the early months of the COVID-19 pandemic when childcare centers were not accepting new enrollments, Kearney denied Ms. Roland the option to work remotely after giving birth, even though her coworkers were granted the option of working remotely during that same time.

5. Additionally, Ms. Roland had asked to shift her schedule by one hour so that her child's father (who worked night shift) could care for the newborn child while Ms. Roland worked, but Kearney denied that request as well even though it would have created no hardship for the company.

6. Kearney ultimately terminated Plaintiff's employment because of her sex, her recent pregnancy, and her caregiver status.

7. Ms. Roland brings this action to enforce her statutory rights to equal employment opportunities under Title VII and the VHRA.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under Title VII, a federal statute. This court has supplemental jurisdiction over Ms. Roland's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in this district under 42 U.S.C. § 2000(e)(5), because the unlawful employment practices were committed in Abingdon, Virginia. Additionally, Kearney's HAPCO division office is located in this district.

## CONDITIONS PRECEDENT

10. On August 3, 2020, Ms. Roland timely filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission, which was dually filed with the Virginia Division of Human Rights.

11. On January 31, 2023, the Equal Employment Opportunity Commission ("EEOC") issued Ms. Roland a Determination and Notice of Right to Sue ("EEOC Notice of Right to Sue"), which is attached hereto as Exhibit 1.

12. This Complaint has been filed within 90 days of receipt of the EEOC Notice of Right to Sue.

13. On March 1, 2023, the Office of Civil Rights of the Office of the Attorney General of Virginia ("OCR") issued Ms. Roland a Notice of Right to File a Civil Action ("OCR Notice"), which is attached hereto as Exhibit 2.

14. This Complaint has been filed within 90 days of the receipt of the OCR Notice.

15. Ms. Roland has fully complied with all prerequisites to jurisdiction in this Court under Title VII and the VHRA.

**PARTIES**

16. Ms. Roland resides in Abingdon, Virginia. She is a citizen of Virginia.

17. Ms. Roland was an employee of Kearney, as defined by Title VII and the VHRA. Ms. Roland worked for Kearney as a Sales Resource Coordinator in Abingdon, Virginia, at Kearney's HAPCO Division. Ms. Roland first worked for Kearney through Luttrell Staffing Company as a temporary employee beginning in August 2019. She was hired as an employee of Kearney on or about November 18, 2019. Kearney unlawfully terminated Ms. Roland's employment on or about June 22, 2020, after refusing to grant her equal employment opportunities.

18. Kearney is a Delaware corporation with its principal place of business in Poughkeepsie, New York. Its HAPCO Division is based in Washington County, Virginia. The site at which Ms. Roland worked is located at 26252 Hillman Highway, Abingdon, Virginia 24210.

19. Kearney is an employer as defined by Title VII and the VHRA.

## FACTUAL ALLEGATIONS

20. Ms. Roland began working for Kearney as a temporary employee on or about August 17, 2019, through the staffing agency Luttrell Staffing Company. On November 18, 2019, Kearney hired Ms. Roland as its own full-time employee, as a Sales Resource Coordinator.

21. During her time at Kearney, Ms. Roland performed well and received good performance reviews.

22. On or about September 30, 2019, Ms. Roland informed Kearney that she was pregnant.

23. In March of 2020, Ms. Roland began to experience complications with her pregnancy. She had blood pressure issues and swelling, and her doctor put her on bed rest. However, Ms. Roland would have been able to work from home.

24. Ms. Roland requested to work from home while on bed rest. She could have performed the duties of her position remotely. Kerney, however, denied this request for a reasonable accommodation. Instead, Kearney forced Ms. Roland to use paid time off while she dealt with pregnancy complications.

25. On March 26, 2020, Kearney sent out a letter to its employees stating it would grant an additional ten weeks of partial pay for employees who were forced to stay home because they could not find adequate childcare due to COVID-19 lockdowns. It did not honor this policy for Ms. Roland.

26. The week prior to Ms. Roland giving birth, from approximately March 30, 2020 through April 3, 2020, Kearney suddenly decided Ms. Roland could work from home. Kearney had fallen behind and needed Ms. Roland's help catching up on projects. Kearney had no issue granting Ms. Roland the ability to work remotely when the company fell behind on projects, yet it

had refused to grant Ms. Roland the ability to work remotely in response to her reasonable request for an accommodation due to her pregnancy complications.

27. Ms. Roland worked until April 3, 2020. On Saturday, April 4, 2020, Ms. Roland gave birth to her son, six weeks prematurely.

28. Her son was in the neonatal intensive care unit (NICU) for some time and experienced medical problems even after he was discharged. Additionally, Ms. Roland experienced significant bleeding and severe postpartum anxiety and depression following the birth, necessitating extra recovery time.

29. During this recovery period, Kearney required Ms. Roland to contact its Human Resources Supervisor, Donna Reeder, every Friday to give Kearney updates about her son's health and her own health. Ms. Roland followed Kearney's instructions and updated Reeder weekly via text or phone call.

30. The complications from her early delivery during the height of the pandemic made recovery difficult for Ms. Roland. She had been on daycare waiting lists since January 2020, but she was unable to find child care because daycares were not taking new children due to COVID-19. Furthermore, she was still suffering from postpartum depression and had begun taking medication to combat her symptoms.

31. On June 16, 2020, Ms. Roland attended a doctor's appointment during which her medical provider informed her that she could return to work if she had recovered from her lingering issues and if she felt able to return. Ms. Roland's understanding was that her medical provider wanted to ensure that her new medication was working and that her emotional state was stable before she returned to work.

32. The next day, on June 17th, Ms. Reeder asked Ms. Roland via text message when the doctor would clear her for work. Ms. Roland responded, "Yesterday [the doctor] told me I was able to return when I felt like I can go back to work."

33. Ms. Reeder responded by urging Ms. Roland to have a return note faxed to her office from the doctor as soon as possible. That same day, Ms. Roland called her doctor to request a return-to-work note.

34. Ms. Roland's doctor's office sent the note to Ms. Reeder on Friday, June 19, 2020.

35. Ms. Roland was not normally scheduled to work on Saturdays or Sundays.

36. On that same Friday, Ms. Reeder created a group chat with herself, Lisa Jones, and Ms. Roland. Ms. Jones is a supervisor in the Human Resources Department at Kearney. In this group text, Ms. Reeder urged Ms. Roland to return to work by Monday, June 22, 2020, as her position was open and she had been cleared for work.

37. However, Ms. Roland responded by emphasizing she was unable to return that Monday because she still could not find childcare for her infant due to the Covid-19 pandemic. She had been on waiting lists at daycares since January of 2020, but daycares simply were not taking new children during the pandemic.

38. During this June 19 conversation, Ms. Roland asked if there were other options available to her. Ms. Reeder was fully aware that Ms. Roland's job could be performed remotely, and had previously been performed remotely, yet neither Ms. Reeder nor Ms. Jones offered Ms. Roland the opportunity to telework, which she had previously requested. Instead, they insisted that she be physically present in the workplace the following Monday.

39. Ms. Reeder had directly called Denise Pekar, Ms. Roland's mother, the week before Kearney terminated Ms. Roland's employment and told Ms. Pekar that Kearney should be able to

6

allow Ms. Roland to work remotely, consistent with how Ms. Roland had been working in the week prior to giving birth.

40. Ms. Roland's coworkers with similar employment positions were at that time permitted to work remotely. Because of the pandemic, *every other employee in the division* was working remotely on a rotating schedule.

41. Kearney subjected Ms. Roland, in the wake of childbirth, to different demands, expectations, and working conditions than similarly situated employees who had not just given birth and were not caretaking mothers, as those employees were permitted to telework.

42. Kearney did not end its pandemic-related remote work policy until approximately two weeks after it terminated Ms. Roland, on July 2, 2020. It could have offered Ms. Roland the option to telework in the meantime, especially as Ms. Roland had asked if there were other options available to her aside from reporting for her usual shift in-person or being terminated.

43. After learning of Ms. Roland's difficult situation of finding childcare and her desire for alternative solutions to continue work, Ms. Jones stated in the June 19 group text, "We are sorry for the problem you are having in finding childcare. We will discuss this on Monday [June 22, 2020] and get back with you if we have any questions. Thank you. Lisa."

44. Ms. Jones and Ms. Reeder never offered Ms. Roland the option to work remotely. Instead, after "discussing" the situation, Ms. Jones, Ms. Reeder, and their supervisor, Chad Thompson, conference-called Ms. Roland on Monday, June 22, 2020 and terminated her employment. This termination was unlawful and discriminatory against Ms. Roland because of her sex, recent pregnancy, and status as a mother and caregiver of an infant.

45. Prior to terminating Ms. Roland, Ms. Jones called Greg Mercier, Ms. Roland's supervisor's boss, into Ms. Jones' office and asked if he had any problem with the company

terminating Ms. Roland's employment. Mr. Mercier opposed the termination, as there was no legitimate business reason for it and he viewed the decision as discriminating against a new mother.

46. Ms. Roland has lost wages, retirement benefits, and valuable insurance and other benefits because of Kearney's unlawful actions. She has experienced significant emotional distress, has had her postpartum depression exacerbated, and has been forced to seek therapy as a result of Kearney's treatment of her.

## COUNT ONE
### Sex, Caregiver, and Pregnancy Status Discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.*

47. Ms. Roland hereby incorporates by reference the previous paragraphs of this Complaint as if realleged fully herein.

48. Ms. Roland is a woman who was qualified for her position as a Sales Resource Coordinator at all relevant times, including when Kearney denied her access to remote work, and when Kearney unlawfully terminated her employment on June 22, 2020.

49. The EEOC states in its guidance titled, *The COVID-19 Pandemic and Caregiver Discrimination Under Federal Employment Discrimination Laws*, that "[e]mployers also may not penalize female employees more harshly than similarly situated male employees for absences or missed deadlines due to pandemic-related caregiving duties." U.S. Equal Emp. Opportunity Comm'n, EEOC-NVTA-2022-1, A Technical Assistance Document on the Covid-19 Pandemic and Caregiver Discrimination (2022).

50. In violation of this EEOC guidance, Kearney penalized Ms. Roland by terminating her employment because she was experiencing pandemic-related caregiving duties, in contradiction to its own announced policy of providing partially paid leave for parents who could not find childcare due to the pandemic. This penalization of Ms. Roland was in violation of EEOC guidance, Title VII, and the VHRA.

51. Kearney also discriminated against Ms. Roland because of her sex and status as a caregiver and recently pregnant woman when it denied her the opportunity to work remotely, which was an opportunity her similarly situated coworkers outside of these protected classes enjoyed. Upon information and belief, none of her coworkers who were permitted to work remotely were pregnant at the time or had just given birth.

52. Kearney further discriminated against Ms. Roland because of her sex, recent pregnancy status, and caregiver status when it terminated her employment due to her inability to return to work in-person while her similarly situated colleagues were permitted and even required to work remotely.

53. Ms. Roland suffered damages as a result of Kearney's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

54. Kearney intentionally violated Ms. Roland's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

### COUNT TWO
### Sex and Pregnancy Status Discrimination Under Virginia Human Rights Act, Va. Code Ann. § 2.2-3900, *et seq.*

55. Ms. Roland hereby incorporates by reference the previous paragraphs of this Complaint as if realleged fully herein.

56. Ms. Roland is a woman and at the time of the relevant events was pregnant or had recently given birth.

57. Ms. Roland was qualified for her position as a Sales Resource Coordinator at all relevant times, including when Kearney denied her access to remote work and when Kearney unlawfully terminated her employment on June 22, 2020.

58. Kearney discriminated against Ms. Roland because of her sex and status as a recently pregnant woman and a caregiver when it denied her the opportunity to work remotely,

9

which was an opportunity her similarly situated coworkers enjoyed.

59. Kearney further discriminated against Ms. Roland because of her sex and status as a recently pregnant woman and a caregiver when it terminated her employment.

60. Va. Code Ann. § 2.2-3909 explicitly provides causes of action to employees when employers fail to provide reasonable accommodations for known limitations related to pregnancy, childbirth, and related medical conditions. Kearney violated this provision of the VHRA when it denied a work-from-home accommodation to Ms. Roland despite knowing that Ms. Roland was suffering from pregnancy complications.

61. Kearney refused to grant remote work as an accommodation prior to giving birth, instead forcing Ms. Roland to use personal time off when she had to be on bed rest, yet it then required Ms. Roland to work remotely for a week when it had fallen behind in work. Kearney's refusal to allow Ms. Roland to work remotely therefore had no legitimate business justification, and remote work was clearly a reasonable accommodation that would have imposed no undue hardship on the company.

62. Ms. Roland suffered damages as a result of Kearney's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

63. Kearney intentionally violated Ms. Roland's rights under the VHRA, with malice or reckless indifference, and, as a result, is liable for punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Roland asks the Court to enter judgment as follows:

a) Award Ms. Roland her past and future loss of wages and benefits, plus interest;

b) Award Ms. Roland all costs and reasonable attorneys' fees incurred in connection with this action;

c) Award Ms. Roland compensatory damages;

    d)    Award Ms. Roland punitive damages; and

    e)    Award such other and further relief as the Court may deem just and proper.

                              MADISON ROLAND
                              By Counsel

/s/ *Alexis I. Tahinci*
Alexis I. Tahinci (VSB #85996)
TAHINCI LAW FIRM PLLC
105 Ford Ave. Suite 3
Kingsport, TN 37663
Ph: (423) 406-1151
F: (423) 815-1728
Alexis@tahincilaw.com
COUNSEL FOR PLAINTIFF